UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

|  |  |
|---|---|
| KAYLA TAYLOR, Individually and on Behalf of All Others Similarly Situated, | Case No.  3:25-cv-01120-JCH |
| Plaintiff, | **September 12, 2025** |
| v. | |
| BIOHAVEN LTD., VLAD CORIC, and MATTHEW BUTEN, | |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JOHN C. SASSE FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT.......................................................................................................................... 4

      I.        SASSE SHOULD BE APPOINTED LEAD PLAINTIFF ..................................... 4

              A.       Sasse Is Willing to Serve as Class Representative...................................... 5

              B.       Sasse Has the "Largest Financial Interest" in the Action .......................... 6

              C.       Sasse Otherwise Satisfies the Requirements of Rule 23............................ 7

              D.       Sasse Will Fairly and Adequately Represent the Interests of the Class
                      and Is Not Subject to Unique Defenses ...................................................... 10

      II.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
             APPROVED ...................................................................................................... 10

CONCLUSION..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .........................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................................9

*Galmi v. Teva Pharms. Indus.*,
302 F. Supp. 3d 485 (D. Conn. 2017)..............................................................................6, 7, 8, 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..........................6

*In re Comverse Technology, Inc. Securities Litigation*,
No. 1:06-cv-01825 (E.D.N.Y.) ................................................................................................11

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) .................................................................................................10

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................................................6

*In re Petrobras Securities Litigation*,
No. 14-cv-09662 (S.D.N.Y.).....................................................................................................11

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 112 (S.D.N.Y. 2010) ...............................................................................................8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) .............................................................................................10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015).........................................................................................7

*Labul v. XPO Logistics, Inc.*,
No. 3:18-CV-2062 (VLB), 2019 WL 1450271 (D. Conn. Apr. 2, 2019) ...............................6, 7

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036, (N.D. Ill. Aug. 6, 1997)........................................................6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ *passim*

Prescription Drug User Fee Act ....................................................................................................4

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

Securities Exchange Act of 1934 ..........................................................................................1, 6, 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

John C. Sasse ("Sasse")[1] respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Sasse as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Biohaven Ltd. ("Biohaven" or the "Company") securities between March 24, 2023 and May 14, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act. Biohaven investors, including Sasse, incurred significant losses following the disclosures of the alleged fraud, which caused Biohaven's share price to fall sharply, damaging Sasse and other Biohaven investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with its purchases of Biohaven securities during the Class Period, the Sasse Family incurred losses of approximately $247,841. *See* Finestone Decl., Ex. B. Accordingly, Sasse believes that he has the largest financial interest in the relief sought in this Action. Beyond his considerable financial

---

[1] Sasse pursues claims in this litigation both on his own behalf and on behalf of his wife, Eileen R. Sasse (together with Sasse, the "Sasse Family"), from whom he has received a valid assignment of those claims. *See* Declaration of Emily C. Finestone in Support of Motion ("Finestone Decl."), Exhibit ("Ex.") A.

interest, Sasse also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Sasse has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Sasse respectfully requests that the Court enter an Order appointing Sasse as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, Biohaven is a biopharmaceutical company that discovers, develops, and commercializes therapies for immunology, neuroscience, and oncology. Dkt. No. 1 ¶ 2. The Company is developing, among other product candidates, troriluzole for the treatment of spinocerebellar ataxia ("SCA"), among other indications, as well as BHV-7000 for the treatment of bipolar disorder, among other indications. *Id.*

In May 2022, a Phase 3 trial evaluating troriluzole's efficacy as a treatment for SCA (the "Phase 3 SCA Trial") failed to meet its primary endpoint. *Id.* ¶ 3. Nonetheless, at all relevant times, Defendants continued to consistently tout troriluzole's purported viability and regulatory prospects as a treatment for SCA based on certain post-hac analyses and additional data. *Id.*

In May 2023, Biohaven announced that it had submitted a New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") for troriluzole as a treatment for SCA (the "troriluzole NDA"). *Id.* ¶ 4. Likewise, in October 2023, Biohaven announced that the European

2

Medicines Agency ("EMA") had accepted the Company's Marketing Authorization Application ("MAA") for troriluzole as a treatment for SCA (the "troriluzole MAA"). *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. *Id.* ¶ 5. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) troriluzole's regulatory prospects as a treatment for SCA, and/or the sufficiency of data that Biohaven submitted in support of troriluzole's regulatory approval for this indication, were overstated; (ii) BHV-7000's efficacy and clinical prospects as a treatment for bipolar disorder were likewise overstated; (iii) all the foregoing, once revealed, was likely to have a significant negative impact on Biohaven's business and financial condition; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times. *Id.*

On July 27, 2023, Biohaven issued a press release disclosing that the FDA had rejected the troriluzole NDA, refusing even to review the application because the Phase 3 SCA Trial had failed to meet its primary endpoint. *Id.* ¶ 6.

On this news, Biohaven's stock price fell $5.38 per share, or 22.61%, to close at $18.42 per share on July 27, 2023. *Id.* ¶ 7.

On December 16, 2024, Biohaven issued a press release announcing, *inter alia*, that it had resubmitted the troriluzole NDA to the FDA following additional purportedly positive efficacy data and "completion of a pre-NDA meeting in" the fourth quarter ("Q4") of 2024. *Id.* ¶ 8.

On March 3, 2025, Biohaven issued a press release reporting its Q4 and full year 2024 financial results and recent business developments. *Id.* ¶ 9. Therein, Biohaven disclosed that recent data from a late-stage study of BHV-7000 in bipolar mania "did not statistically separate from the comparator on the Young Mania Rating Scale primary outcome measure[.]" *Id.*

3

On this news, Biohaven's stock price fell $5.12 per share, or 13.77%, to close at $32.06 per share on March 3, 2025. *Id.* ¶ 10.

On April 25, 2025, multiple news reports emerged that, according to the EMA, Biohaven had withdrawn its troriluzole MAA in late March 2025. *Id.* ¶ 11.

On this news, Biohaven's stock price fell $3.56 per share, or 15.21%, to close at $19.84 per share on April 25, 2025. *Id.* ¶ 12.

Then, on May 14, 2025, Biohaven issued a press release "announc[ing] that the Division of Neurology 1 within FDA's Office of Neuroscience informed the Company that they are extending the [Prescription Drug User Fee Act ('PDUFA')] date for the troriluzole [NDA] for the treatment of [SCA] by three months to provide time for a full review of Biohaven's recent submissions related to information requests from the FDA." *Id.* ¶ 13.  The press release further stated that "[t]he Division also informed Biohaven that it is currently planning to hold an advisory committee meeting to discuss the application, but no date has been scheduled." *Id.*

On this news, Biohaven's stock price fell $3.84 per share, or 19.53%, to close at $15.82 per share on May 15, 2025. *Id.* ¶ 14.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Biohaven's securities, Sasse and other Class members have suffered significant losses and damages. *See id.* ¶ 15.

ARGUMENT

I.      SASSE SHOULD BE APPOINTED LEAD PLAINTIFF

Sasse should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

4

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Sasse satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.      Sasse Is Willing to Serve as Class Representative

On July 14, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Biohaven and other defendants, and advising investors in Biohaven securities that they had until September 12, 2025—*i.e.*, 60 days

5

from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Finestone Decl., Ex. C.

Sasse has filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. D. Accordingly, Sasse satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      Sasse Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Sasse has the largest financial interest of any Biohaven investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and routinely applied by courts in this District. *See Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 497 (D. Conn. 2017); *Labul v. XPO Logistics, Inc.*, No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *4 (D. Conn. Apr. 2, 2019). Of the *Lax* factors, courts in the Second Circuit, including this District, generally emphasize approximate loss in assessing a lead plaintiff movant's

---

[2] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

financial interest within the meaning of the PSLRA. *See, e.g.*, *Galmi*, 302 F. Supp. 3d at 497-98; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

In connection with its purchases of Biohaven securities during the Class Period, the Sasse Family incurred losses of approximately $247,841. *See* Finestone Decl., Ex. B. To the extent that Sasse possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.    Sasse Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; rather, "[a]t this early stage in the litigation, the proposed lead plaintiff must only meet its prima facie burden of establishing its adequacy and typicality." *Galmi*, 302 F. Supp. 3d at 505; *see also Labul*, 2019 WL 1450271, at *5 (same). In addition, "[t]ypicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA." *Labul*, 2019 WL 1450271, at *5 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033

7

(S.D.N.Y. June 29, 2009)).   Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Sasse.  *See* Dkt. No. 1 ¶¶ 74, 77.

The typicality requirement of Rule 23(a)(3) "is satisfied by showing that each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Galmi*, 302 F. Supp. 3d at 505 (quoting *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay*, 272 F.R.D. at 120 (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Sasse's claims are typical of those of the Class.  Sasse alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Biohaven, or by omitting to state material facts necessary to make the statements they did make not misleading.  Sasse, like other Class members, purchased Biohaven securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Biohaven's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Galmi*, 302 F. Supp. 3d at 505 (quoting *Alibaba*, 102 F. Supp. 3d at 536); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (same); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Sasse is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz, Sasse has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Sasse is also represented by the Portnoy Law Firm in this Action. There is no evidence of antagonism or conflict between Sasse's interests and those of the Class. Moreover, Sasse has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Finestone Decl., Ex. D), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Sasse has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this Action on behalf of the Class. *See id.*, Ex. E.

9

D.       Sasse Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Sasse's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Sasse's ability and desire to fairly and adequately represent the Class has been discussed above.  Sasse is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Sasse should be appointed Lead Plaintiff for the Class.

II.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with the Lead Plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Sasse has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed

10

in its firm resume submitted herewith.  *See* Finestone Decl., Ex. F.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States.  *See id.*  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010.  *See id.*  More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class.  *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Sasse's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously.  Thus, the Court may be assured that by approving Sasse's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Sasse respectfully requests that the Court issue an Order: (1) appointing Sasse as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated:  September 12, 2025                    Respectfully submitted,

POMERANTZ LLP

*/s/ Emily C. Finestone*

11

Emily C. Finestone (Bar No. ct30250)
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for John C. Sasse and Proposed Lead
Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(*pro hac vice* application forthcoming)
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for John C. Sasse*

12

CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Emily C. Finestone
Emily C. Finestone

13