UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

|  |  |
|---|---|
| KAYLA TAYLOR, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>      v.<br><br>BIOHAVEN LTD., VLAD CORIC, and MATTHEW BUTEN,<br><br>       Defendants. | Case No.  3:25-cv-01120-JCH<br><br>**October 17, 2025** |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
OF JOHN C. SASSE FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD COUNSEL

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 1

    I.       SASSE'S CERTIFICATION IS NOT DEFECTIVE ............................................ 1

    II.      THE TIMING OF THE SASSE FAMILY'S CLASS PERIOD
           TRANSACTIONS IS NOT DISQUALIFYING ................................................... 6

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990), *abrogated by Microsoft Corp. v. Baker*, 582 U.S.
    23, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017) ..............................................................9

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*,
    No. 09-MD-2058, 2011 WL 3211472 (S.D.N.Y. 2011)...........................................8, 9

*In re Enzymotec Ltd. Sec. Litig.*,
    No. CIV.A. 14-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015)....................................9

*In re Netflix, Inc., Sec. Litig.*,
    No. 12-0225 SC, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ..................................9

*In re Spero Therapeutics, Inc. Sec. Litig.*,
    No. 22CV3125LDHRLM, 2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) ...................4

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015).........................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................................8

*May v. Barclays PLC*,
    No. 23-CV-2583 (LJL), 2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) .....................5

*Pino v. Cardone Cap., LLC*,
    No. 2:20-CV-08499-JFW (KSX), 2020 WL 7585839 (C.D. Cal. Dec. 18,
    2020) ............................................................................................................................9

*Porter v. Graftech Int'l Ltd.*,
    No. 1:24 CV 00154, 2024 WL 2189642 (N.D. Ohio May 15, 2024) ..........................5

*Rodriguez v. DraftKings Inc.*,
    No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)..............5, 9

*Schaffer v. Horizon Pharma Plc*,
    No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) .....................9

*Siegel v. Bos. Beer Co., Inc.*,
    No. 21-CV-7693 (VSB), 2021 WL 5909133 (S.D.N.Y. Dec. 14, 2021)......................4

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...................................................................................................8, 9

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A)(iv) ............................................................................................2, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..........................................................................................7

Private Securities Litigation Reform Act of 1995 ................................................................1, 2, 7

Securities Exchange Act of 1934 Section 10(b) ........................................................................7, 8

**Rules**

Federal Rules of Civil Procedure 23 ......................................................................................1, 4

Lead Plaintiff Movant Sasse[1] respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 15).

PRELIMINARY STATEMENT

As discussed at length in his moving and opposition briefs (Dkt. Nos. 15-1, 21), Sasse is the presumptive "most adequate plaintiff" under the PSLRA because he has the largest financial interest in this Action among those seeking appointment as lead plaintiff, with the Sasse Family having incurred losses of approximately $247,841 in connection with its Class Period transactions in Biohaven securities (*see* Dkt. No. 15-4 at *2; Dkt. No. 21 at 1-4), and he otherwise satisfies Rule 23's typicality and adequacy requirements.    *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Nevertheless, the only competing movant, Newcomb, contests Sasse's appointment as Lead Plaintiff, arguing in his opposition brief that Sasse has failed to satisfy Rule 23's adequacy requirement for two reasons: (i) Sasse's Certification (Dkt. No. 15-6) is purportedly defective (*see* Dkt. No. 22 at 1-2, 4-5); and (ii) the timing of the Sasse Family's transactions purportedly places Sasse at risk of losing statutory standing to pursue the fraud claims in this Action (*see id.* at 2, 5-7).  As discussed in detail below, these arguments uniformly fail.

ARGUMENT

I.    SASSE'S CERTIFICATION IS NOT DEFECTIVE

Contrary to Newcomb's assertions (*see* Dkt. No. 22 at 1-2, 4-5), Sasse's Certification (Dkt. No. 15-6) fully complies with the PSLRA's requirements and does not render him an inadequate Class representative under Rule 23.  The plain language of the statute does not require Sasse to

---

[1] All capitalized terms herein are defined in Sasse's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 15-1, 21.

"identify which trades are [Sasse's] and which trades belong to his wife" nor mandates that the schedule of transactions appended to Sasse's Certification (the "Transaction Schedule") (Dkt. No. 15-6 at *4-5) "specify which transactions belong to him versus his wife", as Newcomb claims. Dkt. No. 22 at 2, 4.  Rather, the PSLRA simply states, in relevant part, that "[i]n general" "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff . . . that . . . sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint[.]"  15 U.S.C. § 78u-4(a)(2)(A)(iv).  Here, Sasse has complied with the PSLRA's requirements.  His Certification states that "[a]ll transactions in Biohaven securities during the Class Period as specified in the Complaint are listed in the attached sheet"— *i.e.*, the Transaction Schedule—appended to his Certification.  Dkt. No. 15-6 at *2 ¶ 5; *see also id.* at *4-5 (listing all of the Sasse Family's transactions in Biohaven securities during the Class Period).  This is accurate.  The fact that some of these transactions were executed in an account belonging to his wife does not change the fact that Sasse has "set[] forth all of [his] transactions . . . in the security that is the subject of the complaint during the class period specified in the complaint[.]"  15 U.S.C. § 78u-4(a)(2)(A)(iv).  Moreover, Sasse fully disclosed in his motion papers that, in addition to his own investment losses, he also pursues recovery of investment losses incurred by his wife.  *See* Dkt. No. 15-1 at 1 n.1.  There is nothing misleading or inaccurate about Sasse's Certification.

Moreover, Newcomb is wrong that Sasse's Certification is defective because it purportedly "fail[s] to make a timely preliminary showing of his monetary interest in the relief sought by the class" or "makes it impossible to determine his financial interest in the relief being sought in this Action."  Dkt. No. 22 at 4.  Sasse has received a valid assignment of the claims in this litigation

from his wife, ***which is nearly identical to the assignment of claims that Newcomb himself received from his own wife*** in connection with this Action.  *Compare* Dkt. No. 15-3 at \*2 (assigning claims in this Action from Eileen R. Sasse to Sasse), *with* Dkt. No. 14-3 at \*3 (assigning claims in this Action from Martha J. Newcomb to Newcomb, using substantively identical language).  Accordingly, Sasse's claimed financial interest in this Action is clear: he is expressly pursuing recovery of both his and his wife's losses ($247,841) incurred in connection with their Class Period transactions in Biohaven securities, as set forth in the loss chart Sasse submitted as an exhibit with his initial motion papers (the "Loss Chart") (Dkt. No. 15-4) and the Transaction Schedule appended to his Certification (Dkt. No. 15-6 at \*4-5).

In any event, to allay any questions as to which account belongs to whom, only "Account 1" listed in the Transaction Schedule appended to Sasse's certification solely belongs to his wife, whereas "Account 4" is a joint account owned by Sasse and his wife.  The other accounts on which Sasse claims a loss—"Account 2" and "Account 3"—are his alone.  Sasse's losses in connection with accounts that he owns solely or jointly (namely, Accounts 2, 3, and 4) total $174,055, whereas his losses in connection with accounts solely belonging to him (Accounts 2 and 3) total $168,066. *See* Dkt. No. 15-4.  Meanwhile, the losses Sasse claims—via a valid assignment of those claims (*see* Dkt. No. 15-3)—from transactions in Account 1, which belongs to his wife, total $73,786. *See* Dkt. No. 15-4.  Newcomb claims a loss of approximately $141,696.  *See* Dkt. No. 14-1 at 6; Dkt. No. 14-4 at \*3.  Accordingly, Sasse's losses from transactions in accounts solely owned by him exceed those from accounts owned by his wife, ***as well as*** exceed Newcomb's claimed losses. As such, Newcomb's speculation that "it may very well be that [Sasse's] wife, Eileen Sasse, purchased the majority of the Biohaven securities at issue, thereby making her the appropriate movant for lead plaintiff and not Mr. Sasse" (Dkt. No. 22 at 4), is simply incorrect.

The fact that Sasse's Certification complies with the PSLRA's requirements and provides more than a sufficient basis to determine his financial interest in this Action renders Newcomb's arguments regarding Sasse's purported inability to "correct his certification after the fact" (*see* Dkt. No. 22 at 5) meaningless—there is nothing to correct.

Even assuming, *arguendo*, that Sasse's Certification did not strictly comply with the PSLRA's provisions (and again, it does), the mere fact that his Certification sets forth all of the Sasse Family's Class Period transactions in Biohaven securities but does not specify which account belongs to his wife would not render him inadequate under Rule 23. "[M]inor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015); *see also In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22CV3125LDHRLM, 2022 WL 4329471, at *8 (E.D.N.Y. Sept. 19, 2022) (finding mistakes in movant's transactions listed in sworn Certification "are relatively minor" and "not the kind of errors that courts in th[e Second] Circuit typically view as demonstrating a movant's inadequacy to serve as lead plaintiff"); *Siegel v. Bos. Beer Co., Inc.*, No. 21-CV-7693 (VSB), 2021 WL 5909133, at *8 (S.D.N.Y. Dec. 14, 2021) ("[Competing movant] Group argued that [movant]'s motion should be denied as inadequate because he listed incorrect dates for four transactions . . . . I am not troubled by the errors."). This is especially true where, as here, the "mistakes do not prejudice any party to this litigation or the . . . other movant[s]" and "[n]or is there any evidence of bad faith or an intent to deceive[.]" *Spero*, 2022 WL 4329471, at *9.

Here, Sasse's purported "mistake" in not identifying which accounts belong to him as opposed to his wife (despite there being no statutory requirement to do so) had no bearing on his claimed financial interest in this litigation. He claims a financial interest on the losses stemming

4

from the transactions in both his own accounts and his wife's, the latter claims of which were validly assigned to him.  *See* Dkt. No. 15-3; *see also* Dkt. No. 15-1 at 1 n.1 ("Sasse pursues claims in this litigation both on his own behalf and on behalf of his wife, Eileen R. Sasse . . ., from whom he has received a valid assignment of those claims.").  Similarly, no other party or movant was prejudiced by the contents of Sasse's Certification for the same reason that there is no evidence of bad faith or intent to deceive—namely, Sasse received a valid assignment of the claims stemming from the transactions in Biohaven securities in his wife's account (Dkt. No. 15-3), in his Certification he "set[] forth all of [their] transactions . . . in the security that is the subject of the complaint during the class period specified in the complaint" (15 U.S.C. § 78u-4(a)(2)(A)(iv)), and he accurately set forth his financial interest based on these transactions in his initial moving papers (*see* Dkt. No. 15-1 at 1, 7; Dkt. No. 15-4).

The cases Newcomb relies upon in support of his contrary positions outlined above are easily distinguished, as they largely involved situations where there were multiple, varying, and significant errors and/or inconsistencies in a movant's motion papers,[2] the movant at issue failed to represent at the time of filing its motion that it had any ownership in the shares at issue,[3] or else the movant at issue failed to file a valid assignment of claims with its motion papers.[4]

Further discrediting Newcomb's argument is the fact that ***his own Certification*** is subject to the same purported "error" as Sasse's Certification, because Newcomb's Certification likewise

---

[2] *See Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at \*5, \*9 (S.D.N.Y. Nov. 12, 2021).

[3] *See Porter v. Graftech Int'l Ltd.*, No. 1:24 CV 00154, 2024 WL 2189642, at \*9 (N.D. Ohio May 15, 2024).

[4] *See Porter*, 2024 WL 2189642, at \*8-9 (noting no assignment of claims submitted with motion papers); *May v. Barclays PLC*, No. 23-CV-2583 (LJL), 2023 WL 5950689, at \*15 (S.D.N.Y. Sept. 13, 2023) (taking issue with movant's undated assignments of claims).

does not identify which trades are his as opposed to his wife's. *See* Dkt. No. 14-3 at *2 ¶ 4, *4-6 (identifying all transactions as belonging to Newcomb and none as belonging to his wife). Here, Newcomb likewise submitted an assignment of claims from his wife with his motion papers. *See id.* at *3. Newcomb explains in his moving brief that his "Certification includes an Assignment from his wife, Martha Newcomb" and that "'Account 2' refers to Martha Newcomb's account" while Newcomb "owns the other two accounts" (Dkt. No. 14-1 at 6 n.2), but nowhere in Newcomb's Certification does he identify which transactions are his versus his wife's. *See generally* Dkt. No. 14-3. In fact, Newcomb's Certification describes all of the trades appended to it as belonging to ***him***. *See id.* at *2 ¶ 4 (claiming only that "*[m]y* transaction(s) in Biohaven Ltd. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto" (emphasis added)). Indeed, the chart attached to Newcomb's Certification setting forth his (and purportedly his wife's) Class Period transactions in Biohaven securities ***identifies each account as belonging to Newcomb***. *See id.* at *4-6 (labelling Accounts 1, 2, and 3 under the "Client Name" "Howard Newcomb"). Thus, according to Newcomb, "[w]hile [he] claims to have obtained an assignment from his wife, his ***certification*** does *not* comply with th[e PSLRA's] statutory requirement because it does not identify which trades are his and which trades belong to his wife." Dkt. No. 22 at 2 (first emphasis added). It is difficult to credit Newcomb's position when his own motion papers are substantively identical to Sasse's in precisely the respect that Newcomb claims is defective.

II.    THE TIMING OF THE SASSE FAMILY'S CLASS PERIOD TRANSACTIONS IS NOT DISQUALIFYING

Newcomb's speculative argument that "Mr. Sasse and/or his wife's transaction history places them at risk of losing 'statutory standing' to pursue the alleged claims against the defendants in this action" is meritless. Dkt. No. 22 at 2; *see also id.* at 5-7. Specifically, Newcomb argues

6

that, because "Mr. and/or Mrs. Sasse's transactions in Biohaven securities occurred *primarily* between December 2023 and January 2024[,]" if "the start of the Class Period in this action is shortened by a few months, Mr. and/or Mrs. Sasse will not have engaged in a purchase or sale during the relevant period during which misconduct allegedly occurred, in which case Mr. Sasse will lack standing to bring fraud claims against Defendants under Section 10(b) of the Exchange Act." Dkt. No. 22 at 6 (emphasis added). Newcomb's argument is flawed for multiple reasons.

As an initial matter, there is no reason to believe—and Newcomb has put forth no specific reason to believe—that plaintiffs' counsel would or should shorten the start of the Class Period in this Action such that it would exclude the Sasse Family's transactions in Biohaven securities occurring between December 2023 and January 2024. *See generally* Dkt. No. 22. To overcome the strong presumption entitling Sasse to appointment as Lead Plaintiff, the PSLRA requires "*proof*" that he is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). While Newcomb is correct that "[i]n a securities fraud class action like the one at bar, the initial class period is subject to change because the initial complaint is traditionally followed by an amended complaint shortly after a lead plaintiff is appointed" (Dkt. No. 22 at 6), the facts particular to the instant Action do not support Newcomb's position. In particular, the Class Period in this Action runs from March 24, 2023 to May 14, 2025, both dates inclusive. *See* Dkt. No. 1 ¶ 1. Far from just "a few months" (Dkt. No. 22 at 6), to exclude the Sasse Family's transactions occurring between December 2023 and January 2024, plaintiffs' counsel would need to shorten the start of the Class Period *by nearly a year*. *See id.* Newcomb has offered no reason to believe that plaintiffs' counsel would or should drastically shorten the Class Period to such an extent. This makes his argument the very definition of speculation. Indeed, it is unclear why plaintiffs' counsel

7

would have any reason to shorten the Class Period, as doing so would presumably reduce the Class's recoverable damages in this Action.

Even assuming, *arguendo*, that the start of the Class Period was shortened by nearly a year, Sasse would still have standing to pursue the fraud claims in this Action because, even under a hypothetical truncated Class Period, Sasse would still have incurred an investment loss. "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury[.]'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). In a securities fraud class action under Section 10(b) of the Exchange Act, like this Action, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue and engaged in a purchase or sale ***during the relevant period*** when the misconduct allegedly occurred (*i.e.*, during the Class Period). *See In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at \*12-14 (S.D.N.Y. 2011) (noting Article III standing in securities fraud actions requires beneficial ownership in the securities at issue and a purchase or sale of those securities ***during the relevant period***).

Here, even if the Sasse Family's relevant transactions occurring between December 2023 and January 2024 were excluded—and there is no reason to believe they would be—the Sasse Family will still have purchased Biohaven securities during the relevant period (*i.e.*, the Class Period). Specifically, as Newcomb himself acknowledges, the Sasse Family's "transactions in Biohaven securities occurred ***primarily*** between December 2023 and January 2024[.]" Dkt. No. 22 at 6 (emphasis added). Indeed, the Sasse Family purchased 1,013 Biohaven shares ***after*** January

2024. *See* Dkt. No. 15-4; Dkt. No. 15-6 at *4-5. For purposes of determining standing, a plaintiff either suffered an injury or they did not. *See Spokeo*, 578 U.S. at 339 ("[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury[.]'" (quoting *Valley Forge*, 454 U.S. at 472)). Accordingly, because the Sasse Family will still have made a purchase during the relevant period in the (highly unlikely) event the start of the Class Period is shortened by nearly a year, Sasse will still have standing to pursue the fraud claims in this Action. *See Bank of America*, 2011 WL 3211472, at *12-14 (noting Article III standing in securities fraud actions requires beneficial ownership in the securities at issue and a purchase or sale of those securities ***during the relevant period***).

Tellingly, the cases Newcomb cites in ostensible support of his opposing position either did not address the issue of standing at all,[5] or else did not address standing in the context of the timing of a movant's transactions.[6]

---

[5] *See Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (taking issue with other concerns); *Rodriguez*, 2021 WL 5282006, at *5, *9-10 (same); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (same while evaluating class representative at the class certification stage), *abrogated by Microsoft Corp. v. Baker*, 582 U.S. 23, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017).

[6] *See In re Enzymotec Ltd. Sec. Litig.*, No. CIV.A. 14-5556, 2015 WL 918535, at *2-3 (D.N.J. Mar. 3, 2015) (addressing standing with respect to authority to pursue claims on behalf of a company at which the movant was employed); *Pino v. Cardone Cap., LLC*, No. 2:20-CV-08499-JFW (KSX), 2020 WL 7585839, at *6 (C.D. Cal. Dec. 18, 2020) (addressing standing in the context of one's ability to pursue claims in connection with securities of a fund in which the movant did not invest); *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (addressing standing where movant did not show it actually owned the shares at issue and failed to provide an assignment of claims).

CONCLUSION

For the foregoing reasons, Sasse respectfully requests that the Court issue an Order: (1) appointing Sasse as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated:  October 17, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Emily C. Finestone*
Emily C. Finestone (Bar No. ct30250)
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for John C. Sasse and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(*pro hac vice* application forthcoming)
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for John C. Sasse*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Emily C. Finestone*
Emily C. Finestone

11