# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| KAYLA TAYLOR, Individually and on Behalf of All Others Similarly Situated<br>*Plaintiff*,<br><br>v.<br><br>BIOHAVEN LTD., VLAD CORIC, and MATTHEW BUTEN,<br>*Defendant(s)*. | No. 3:25-cv-01120 (VAB) |

## RULING AND ORDER ON MOTIONS TO APPOINT LEAD PLAINTIFF

Kayla Taylor has brought a securities fraud class action against Biohaven, LTD., Vlad Coric, and Matthew Buten (collectively, the "Defendants"). Compl.

Before the Court are three competing motions by (1) Sebastian Barthelmess, (2) Howard Newcomb, and (3) John C. Sasse to be appointed Lead Plaintiff, under § 21D(a)(3)(B) of the Securities Exchange Act of 1924 (Exchange Act), as amended by the Private Securities Litigation Reform Act (PSLRA), and to approve the Lead Plaintiff's selection of counsel. *See* Notice of Mot. and Mot. of Sebastian Barthelmess to: (1) Appoint Lead Pl.; and (2) Approve Lead Pl.'s Selection of Counsel ("Barthelmess Mot."), ECF No. 13; Mot. of Howard Newcomb for Appointment as Lead Pl. and Approval of Selection of Counsel ("Newcomb Mot."), ECF No. 14; Notice of Mot. of John C. Sasse for Appointment as Lead Pl. and Approval of Lead Counsel ("Sasse Mot."), ECF No. 15.

In light of the notice of non-opposition filed by Sebastian Barthelmess, ECF No. 19, the Court only considers the motions filed by Mr. Sasse and Mr. Newcomb.

For the following reasons, Court **GRANTS** Mr. Sasse's motion, **APPOINTS** him as Lead Plaintiff, **APPROVES** Mr. Sasse's selection of Pomerantz LLP as Lead Counsel, and **DENIES** Mr. Barthelmess's and Mr. Newcomb's motions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Biohaven is allegedly a biopharmaceutical company that discovers, develops, and commercializes therapies for immunology, neuroscience, and oncology. Compl. ¶ 2. The Company is allegedly developing troriluzole for the treatment of spinocerebellar ataxia ("SCA") and BHV-7000 for the treatment of bipolar disorder. *Id.*

In May 2022, a Phase 3 trial evaluating troriluzole's efficacy as a treatment for SCA (the "Phase 3 SCA Trial") allegedly failed to meet its primary endpoint. *Id.* ¶ 3.

Nonetheless, the Defendants allegedly continued to consistently present troriluzole as a viable treatment for SCA and for regulatory approval. *Id.* Additionally, the Defendants allegedly made materially false and misleading statements regarding the Company's business, operations, and prospects. *Id.* ¶ 5.

The Plaintiff alleges that, from March 23, 2023 through May 14, 2025, the Defendants made a series of false and/or misleading statements. *See id.* ¶¶ 5, 31–68. Specifically, the Defendants allegedly made false and/or misleading statements, and/or failed to disclose information, concerning (i) troriluzole's regulatory prospects as a treatment for SCA, and/or the sufficiency of data that Biohaven submitted in support of troriluzole's regulatory approval; and (ii) BHV-7000's efficacy and clinical prospects as a treatment for bipolar disorder. *Id.* ¶ 5. And the Plaintiff alleges that this information, once revealed, was likely to have a significant negative impact on Biohaven's business and financial condition. *Id.*

In May 2023, Biohaven allegedly announced that it had submitted a New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") for troriluzole as a treatment for SCA (the "troriluzole NDA"). *Id.* ¶ 4. Likewise, in October 2023, Biohaven allegedly announced that the European Medicines Agency ("EMA") had accepted the Company's Marketing Authorization Application ("MAA") for troriluzole as a treatment for SCA (the "troriluzole MAA"). *Id.*

On July 27, 2023, Biohaven allegedly issued a press release disclosing that the FDA had allegedly rejected the troriluzole NDA, allegedly refusing to review the application because the Phase 3 SCA Trial had failed to meet its primary endpoint. *Id.* ¶ 6.

Based on this news allegedly, Biohaven's stock price allegedly fell $5.38 per share, or 22.61%, to close at $18.42 per share on July 27, 2023. *Id.* ¶ 7.

On December 16, 2024, Biohaven allegedly issued a press release announcing that it had resubmitted the troriluzole NDA to the FDA following additional purportedly positive efficacy data and "completion of a pre-NDA meeting in" the fourth quarter ("Q4") of 2024. *Id.* ¶ 8.

On March 3, 2025, Biohaven allegedly issued a press release reporting its Q4 and full year ("FY") 2024 financial results and recent business developments. *Id.* ¶ 9. In the press release, Biohaven allegedly disclosed that recent data from a late-stage study of BHV-7000 in bipolar mania allegedly did not find statistically significant results. *Id.*

Based on this news allegedly, Biohaven's stock price allegedly fell $5.12 per share, or 13.77%, to close at $32.06 per share on March 3, 2025. *Id.* ¶ 10.

On April 25, 2025, multiple news reports allegedly revealed that, according to the EMA, Biohaven had allegedly withdrawn its troriluzole MAA in late March 2025. *Id.* ¶ 11.

Based on this news allegedly, Biohaven's stock price allegedly fell $3.56 per share, or 15.21%, to close at $19.84 per share on April 25, 2025. *Id.* ¶ 12.

On May 14, 2025, Biohaven allegedly issued a press release announcing that the FDA was allegedly extending the review period for the troriluzole NDA and holding an advisory committee meeting to discuss the application. *Id.* ¶ 13.

Based on this news allegedly, Biohaven's stock price allegedly fell $3.84 per share, or 19.53%, to close at $15.82 per share on May 15, 2025. *Id.* ¶ 14.

### B. Procedural History

On July 14, 2025, Ms. Taylor filed her class action Complaint. Compl.

On September 12, 2025, Mr. Barthelmess, Mr. Newcomb, and Mr. Sasse all filed motions to be appointed as Lead Plaintiff and to approve the Lead Plaintiff's selection of counsel. Barthelmess Mot.; Newcomb Mot.; Sasse Mot.

On November 26, 2025, Mr. Barthelemess filed a motion of non-opposition. Notice, ECF No. 19.

On October 3, 2025, Mr. Sasse and Mr. Newcomb filed memorandums in support of their motions. Mem. of L. ("Sasse Resp."), ECF No. 21; Howard Newcomb's Mem. of L. in Further Supp. of His Mot. for Appointment as Lead Pl. and Approval of Selection of Counsel ("Newcomb Resp."), ECF No. 22.

On October 17, 2025, Mr. Newcomb and Mr. Sasse filed reply briefs. Howard Newcomb's Reply in Further Supp. of His Mot. for Appointment as Lead Pl. and Approval of Selection of Counsel ("Newcomb Reply"), ECF No. 26; Reply Mem. of L. in Further Supp. of Mot. of John C. Sasse for Appointment as Lead Pl. and Approval of Lead Counsel ("Sasse Reply"), ECF No. 27.

## II.    STANDARD OF REVIEW

The PSLRA requires district courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). It creates a rebuttable presumption that "the most adequate plaintiff . . . is the person or group that" (1) "has either filed the complaint or made a motion [to be appointed lead]," (2) "has the largest financial interest in the relief sought by the class," and (3) "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I).

"To determine the party with the largest financial interest, the Court may consider: '(1) [t]he number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.'" *Brday v. Frontier Commc'ns Corp.*, No. 3:17-CV-1617 (VAB), 2018 WL 525485, at *8 (D. Conn. Jan. 18, 2018) (alteration in original) (quoting *In re Milestone Sci, Sec. Litig.*, 183 F.R.D. 404, 413 (D. N.J. 1998)).

The requirements under Rule 23 are that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Of the four Rule 23 requirements—numerosity, commonality, adequacy, and typicality—only adequacy and typicality come into play when appointing a lead plaintiff under the PSLRA." *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 105 (D. Conn. 2006). The PSLRA did not alter "the preexisting standard by which class representatives are evaluated under Rule 23." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir.2004).

Rebutting the PLSRA's presumption requires "proof . . . that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998) (quoting the PSLRA and reviewing district court's appointment of co-lead plaintiffs in a multidistrict consolidated lawsuit).

After the court selects a lead plaintiff, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). At this stage, the court approves or disapproves the lead plaintiff's choice, but defers to the lead plaintiff's preference and does not make the choice itself. *See In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. at 104 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)).

## III.    DISCUSSION

### A.  The Appointment of Lead Plaintiff

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the one who (1) either filed the complaint or made a timely motion to be appointed lead counsel, (2) has the largest financial interest, and (3) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § § 78u-4(a)(3)(B)(iii)(I).

Both Mr. Newcomb and Sasse filed timely motions. *See* 15 U.S.C. § § 78u-4(a)(3)(A)(i)(II) (requiring that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class").

The Court, therefore, addresses the two remaining prongs.

Mr. Sasse argues he should be appointed Lead Plaintiff because he has the largest financial interest, with a financial loss of approximately $247,841. Sasse Mot. at 1.

Mr. Newcomb, however, argues that Mr. Sasse is not adequate to serve as Lead Plaintiff, because his certification fails to comply with the PSLRA's requirements by not distinguishing between his shares and his wife's shares, and because he risks losing statutory standing if the class period narrows due to purchasing most of his shares within a two-month window near the beginning of the class period. Newcomb Resp. at 1–2. In light of these issues, Mr. Newcomb argues that he should be appointed Lead Plaintiff as he has the next largest financial interest of approximately $141,695, and is without Mr. Sasse's unique defense. *Id.* at 2.

In reply, Mr. Sasse argues that his certification is not defective because the PSLRA does not require him to identify which trades belong to him and which belong to his wife. Sasse Reply at 1–2. Nonetheless, any alleged defect would be minor and not sufficient to find him inadequate as Lead Plaintiff. *Id.* at 4. Furthermore, he argues that the timing of the majority of his purchases does not disqualify him because Mr. Newcomb has failed to provide any proof that he may lose standing, nor would he lose standing because he has other purchases throughout the class period. *Id.* at 7–8.

The Court agrees.

Here, Mr. Sasse has the largest financial interest, as Mr. Newcomb concedes, *see* Newcomb Reply at 5 ("Mr. Newcomb has the next 'largest financial interest' in the litigation once Mr. Sasse is eliminated from contention."). The language of the PSLRA does not create procedural requirements to distinguish between shares purchased that have been assigned to one plaintiff. *See* 15 U.S.C. § 78u-4(a)(2) (listing as one of the requirements that the certification "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint

during the class period specified in the complaint"). Nor has Mr. Newcomb provided caselaw to support this proposition. The ruling in *Porter v. Graftech Int'l Ltd.*, No. 1:24 CV 00154, 2024 WL 2189642 (N.D. Ohio May 15, 2024), is inapposite because it concerns a motion filed by an individual on behalf of a group, but the certification failed to demonstrate "the individual ownership interests held by each 'group member'. . . or any support (assignment, power of attorney, or otherwise) demonstrating his authority to represent their interests." *Porter*, 2024 WL 2189642, at *9.[1] In any event, based on Sasse's submission, his "losses from transactions in accounts solely owned by him exceed those from accounts owned by his wife, ***as well as*** exceed Newcomb's claimed losses." Sasse Reply at 3 (emphasis in original). Thus, as to largest financial interest, the PLSRA's most adequate plaintiff presumption favors Mr. Sasse.

Mr. Newcomb fails to provide "'proof' of a non-speculative risk that [Mr. Sasse] will not be adequate." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016). On this record, there is not a sufficient basis to claim that the class period may narrow from March 24, 2023, to May 14, 2025, and exclude Mr. Sasse's purchases between December 2023 and January 2024. Nonetheless, Mr. Sasse purchased shares beyond that period such that he would have standing even if the class window is narrowed. Thus, Mr. Newcomb has failed to rebut the presumption that Mr. Sasse is the most adequate plaintiff.

Finally, Mr. Sasse satisfies the requirements under Rule 23 concerning typicality and adequacy. As to typicality, his claims "arise[] from the same course of events, and each class

---

[1] Furthermore, this ruling is not sufficient to find the certification inadequate. While "[c]ourts have disqualified movants on adequacy grounds due to 'significant errors and inconsistencies' in their motion papers," *Maeshiro v. Yatsen Holding Ltd.*, No. 22-CV-8165 (JPC) (BCM), 2023 WL 4684106, at *9 (S.D.N.Y. July 21, 2023), "[c]ourts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties," *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 WHP, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012). There is no evidence that Mr. Sasse acted in bad faith or with intent to deceive in filing his certificate. In fact, he has clarified the share ownership in his briefing, to the extent it is even necessary. Sasse Reply at 4–5.

member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see* Sasse Mot. at 8 ("Sasse alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Biohaven, or by omitting to state material facts necessary to make the statements they did make not misleading.").

Similarly, as to adequacy, Mr. Sasse has shown that "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015); *see* Sasse Mot. at 9 (describing his retained counsel, Pomerantz, as "highly experienced in vigorously and efficiently prosecuting securities class actions"); *id.* ("There is no evidence of antagonism or conflict between Sasse's interests and those of the Class."); *id.* ("Sasse has submitted a sworn Certification declaring his commitment to protect the interests of the Class . . . and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.").

Accordingly, Mr. Sasse is the most adequate plaintiff, and the Court shall appoint him as Lead Plaintiff.

### B.  The Approval of Lead Counsel

Under the PLSRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015)

(citing *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM),

2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).

Here, the Court finds no reason to reject Mr. Sasse's choice of Pomerantz LLP as lead

counsel. *See* Sasse Resp. at 6 ("Pomerantz is highly experienced in the areas of securities

litigation and class actions, and has successfully prosecuted numerous securities litigations and

securities fraud class actions on behalf of investors[.]").

Accordingly, the Court shall approve Mr. Sasse's selection of Pomerantz LLP as Lead

Counsel.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Sasse's motion, **APPOINTS** him as

Lead Plaintiff, **APPROVES** Mr. Sasse's selection of Pomerantz LLP as Lead Counsel, and

**DENIES** Mr. Barthelmess's and Mr. Newcomb's motions.

Lead Counsel shall have the following duties and responsibilities on behalf of the Lead

Plaintiff and the putative class:

(a) briefing and argument of motions;

(b) coordination and supervision of discovery proceedings, including depositions;

(c) coordination and supervision of pretrial preparation and the conduct of trial;

(d) coordination and supervision of settlement negotiations; and

(e) coordination and supervision of any other matters concerning the prosecution,

resolution, or settlement of this action.

Additionally, Lead Counsel shall have the responsibility of receiving and disseminating

court orders and notices to all plaintiffs and serving as the contact point with defendants'

counsel, who may effect service of papers on all plaintiffs by serving them upon Lead Counsel.

**SO ORDERED** at New Haven, Connecticut, this 16th day of January, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE